## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DAVID McKINLEY DORSEY, SR.,
*Inmate Identification No. 338932,*

      Plaintiff,

      v.

WEXFORD HEALTH SOURCES, INC.,
OLADIPO OLALEYE, R.N.P. and
DAMON FAYALL,

      Defendants.

Civil Action No. TDC-15-3010

---

### MEMORANDUM OPINION

Plaintiff David McKinley Dorsey, who is currently confined at the Maryland Correctional Institution ("MCI") in Jessup, Maryland, alleges that he was injured in 2012 and that Defendants Wexford Health Sources, Inc. ("Wexford"), Oladipo Olaleye, R.N.P. and Damon Fayall[1] have failed adequately to treat his hip and back injuries. Presently pending before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment, filed on January 19, 2016. The Motion is ready for disposition, and a hearing is unnecessary. *See* D. Md. Local R. 105.6. For the reasons that follow, Defendants' Motion, construed as a Motion for Summary Judgment, is GRANTED.

---

[1] Although Dorsey refers to these Defendants as "Wexford Medical Department," "Olaleye, RNP, Oladiepe," and "Medical Director Damien Fayall," it is apparent from the medical records submitted by Defendants that he is referring to the individuals and entities listed here. Accordingly, the Court will use these names throughout this opinion and the Clerk shall amend the docket to reflect the correct names of Defendants.

## BACKGROUND

On August 13, 2014, Dorsey filed a lawsuit with this Court asserting that inadequate medical treatment of his back and hip pain constituted deliberate indifference to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution. On March 3, 2016, the Court issued a memorandum opinion and order denying his claims and granting a motion for summary judgment against Dorsey. *See Dorsey v. Dep't of Pub. Safety & Corr. Servs.* ("*Dorsey I*"), No. TDC-14-2568, 2016 WL 1239922 (D. Md. Mar. 24, 2016). That opinion is incorporated herein by reference. In that case, the Court considered the medical treatment of Dorsey up to and including February 20, 2015.

## I.     Medical Treatment

On October 5, 2015, Dorsey filed the present lawsuit, alleging that he continues to suffer pain in his hip and back which Defendants have failed to treat adequately. According to Dorsey's 2015 medical records, on March 12, 2015, Dorsey was examined by Olaleye because of his chronic pain. Olaleye continued Dorsey on his medication and submitted a consultation request for Dorsey to be seen by a neurologist. On April 29, 2015, Olaleye again evaluated Dorsey and at that time ordered a cane for him.

On June 4, 2015, Dorsey was evaluated by Harjit Bajaj, M.D., a neurologist at Bon Secours Hospital. Dr. Bajaj recommended that Dorsey receive an MRI of his head and an electromyography ("EMG"). An EMG is a "diagnostic procedure to assess the health of muscles and the nerve cells that control them." Mayo Clinic Staff, *Electromyography (EMG)*, Mayo Clinic (Oct. 25, 2012), http://www.mayoclinic.org/tests-procedures/electroconvulsive-therapy/basics/definition/prc-20014183.

2

Dorsey returned to Dr. Bajaj on July 2, 2015 for the EMG.  As a result of that procedure, Dr. Bajaj did not identify any neuropathy.  Dr. Bajaj observed denervation in Dorsey's lower extremity muscles but could not discern its cause.  Dr. Bajaj concluded that the results of the MRI of Dorsey's head and thoracic spine were needed before any diagnosis could be made and requested that Dorsey return after those studies were complete.

On July 7, 2015, the MRIs were performed.  The MRI of Dorsey's brain revealed, among other things, no intracranial pathology and no findings suggesting multiple sclerosis.  The MRI of the thoracic spine revealed mild spondylosis.  On July 24, 2015, Olaleye advised Dorsey during a medical visit of the diagnosis of spondylosis and the negative finding for multiple sclerosis.  Olaleye noted that Dorsey was not complying with his prescribed medication regimen.

Olaleye examined Dorsey again on September 3, 2015 and September 21, 2015 because of Dorsey's continuing complaints of hip and back pain.  During the September 3, 2015 visit, Dorsey was provided with a back brace to help alleviate pain.  During the September 21, 2015 visit, Olaleye noted that Dorsey did not wear the brace to the medical visit and reminded him to wear it.

Throughout his treatment, Dorsey has been evaluated by the regional medical director, a neurologist, an orthopedist, and a physical therapist.  In the opinion of Dr. Andrew Moultrie, who has reviewed Dorsey's records and whose affidavit was submitted by Defendants, "to a reasonable degree of medical probability" the medical care provided to Dorsey for his hip and back pain "was appropriate and within the applicable standard of care."  Moultrie Aff. ¶¶ 6–52, Defs.' Mot. Dismiss or, in the Alternative, Mot. Summ. J. Ex. 2, ECF No. 13-1.

3

## II.    Procedural History

On October 5, 2015, Dorsey filed his Complaint against Defendants, claiming inadequate medical care and asking Defendants to "take the right step relieving or fixing problem" as well as requesting punitive damages. Compl. at 8, ECF No. 1. On January 19, 2016, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on January 19, 2016, Dorsey was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Dorsey was also informed that he was entitled to file materials in opposition to that motion within 17 days from the date of that letter and that his failure to file a timely responsive brief to illustrate, through accompanying affidavits or other evidence, a genuine dispute of material fact could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. Although Dorsey sought and was granted an extension of time, until March 24, 2016, to file a memorandum in opposition to the Motion, he has not filed one. Instead, on April 7, 2016, Dorsey filed correspondence with the Court asking that the instant case be dropped if "Wexford Medical Department follow[s] through with your instructions from page 14 case: 814-cv-02568." Apr. 7, 2016 Letter, ECF No. 21. In response, the Court instructed Dorsey to advise on whether he wished to continue to litigate the present case. On June 17, 2016, the Court received correspondence from Dorsey indicating that he wished to proceed with this case because he was still in pain. On July 19, 2016, Dorsey filed additional correspondence notifying the Court that MCI was in the process of scheduling a date for unspecified surgery.

## DISCUSSION

Construed liberally, Dorsey's Complaint alleges that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Defendants assert that Dorsey's Complaint should be dismissed for several reasons. First, they assert that Dorsey's claims regarding events occurring before October 5, 2012 are barred by the statute of limitations. Second, they assert that Dorsey's medical malpractice claims may not proceed because they were not filed in the Maryland Health Care Alternative Dispute Resolution Office. Third, they assert that Wexford and Fayall are entitled to dismissal as there is no vicarious liability in § 1983 cases. Fourth, and finally, they assert that Dorsey has failed to demonstrate that his medical care was constitutionally inadequate. For the reasons set forth below, the Motion is granted.

### I.   Legal Standard

Defendants seek dismissal of, or summary judgment on, Dorsey's claims. Because Defendants have submitted evidence for the Court's review, and because Dorsey has not requested an opportunity for discovery, the Motion is construed as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*,

346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## I.    Wexford

At the outset, Dorsey's claims against Wexford must be dismissed because he has neither alleged nor provided evidence to show that Wexford had a policy or custom that resulted in a deprivation of his constitutional rights. Section 1983 allows individuals to sue in federal court any person who violates their federally protected rights while acting under the color of law. 42 U.S.C. § 1983 (2012). The United States Supreme Court, in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), concluded that local government entities are considered "persons" for the purposes of § 1983, but they cannot be held liable solely because they employ an individual who committed an unlawful act. *Id.* at 690–91. Rather, local governments can only be sued if the constitutional violation alleged results from a custom or policy of the local government. *Id.* This standard also applies to private companies that employ individuals acting under color of state law, such as special police officers, who allegedly commit unlawful acts. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Such companies are liable under § 1983 "*only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* (emphasis in original). Because Dorsey has neither alleged nor provided evidence to show that Wexford had a policy or custom to deprive inmates of constitutional rights, the claim against Wexford is dismissed.

6

## II.     Eighth Amendment

To the extent that Dorsey's claim relates to his medical treatment prior to February 2015, that aspect of the claim was fully addressed and dismissed in *Dorsey I*, 2016 WL 1239922, at *5–7 The Court therefore discusses only the claim that Dorsey's medical treatment since February 2015 was constitutionally deficient.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). To be "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178 (internal quotation marks omitted) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)); *see also Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (per curiam) ("Questions of medical judgment are not subject to judicial review."). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). Thus, a deliberate indifference claim has both an objective component—that there objectively exists a serious medical condition and an excessive risk to the inmate's health and safety—and a subjective component—that the official subjectively knew of the condition and risk. *Farmer v. Brennan*,

7

511 U.S. 825, 834, 837 (1978) (holding that an official must have "knowledge" of a risk of harm, which must be an "objectively, sufficiently serious").

Deliberate indifference is an "exacting standard" that requires more than a showing of "mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178; *Rich v. Bruce*, 129 F.3d 336, 339 (4th Cir. 1997) (finding that even when prison authorities are "too stupid" to realize the excessive risk their actions cause, there is no deliberate indifference). To constitute deliberate indifference to a serious medical need, the defendant's actions "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977).

In order for supervisors such as Director Fayall to be liable for a § 1983 deliberate indifference claim, Dorsey would need to show that they (1) failed promptly to provide needed medical care; (2) "deliberately interfered with the prison doctors' performance"; or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854. Generally, prison officials may rely on the health care providers' expertise. *Id.*

Defendants do not dispute that Dorsey has a serious medical condition that requires treatment. They deny, however, that they failed to treat it adequately and thereby acted with "deliberate indifference" to a serious medical need. *See Estelle*, 429 U.S. at 104. A review of Dorsey's medical records reveals that from February to September 2015, Dorsey continued to

8

receive regular treatment and medication for his chronic condition. He was referred to a neurologist, and additional diagnostic testing was completed which ruled out multiple sclerosis and revealed degenerative changes in Dorsey's thoracic spine. As a result, he continued to receive medication, consultation, and orthopedic equipment, including a cane and a back brace. Dorsey's complaints about the medical decisions regarding what tests and treatments are necessary in light of his symptoms are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Dorsey has not provided evidence of any such exceptional circumstances. Accordingly, the Court grants summary judgment to Defendants on Dorsey's Eighth Amendment claim.

The Court reiterates, however, that although it finds no constitutional violations, it trusts that even in the absence of a pending lawsuit, MCI will take steps to ensure that Dorsey receives the medical care needed not only to comply with the minimum requirements of the Constitution, but to address and resolve his chronic pain.

## CONCLUSION

For the foregoing reason, the Motion to Dismiss or, in the alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, is GRANTED. A separate Order shall issue.

Date: August 8, 2016

THEODORE D. CHUANG
United States District Judge